WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BECKIE SPAIN,                          )
                                       )
                           Plaintiff,  )
                                       )
        vs.                            )
                                       )
KILOLO KIJAKAZI, Acting Commissioner   )
of the Social Security Administration, )
                                       )
                           Defendant.  )          No. 3:22-cv-0164-HRH
                                       )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f.  Plaintiff

Beckie Spain has timely filed her opening brief[1] to which defendant, Kilolo Kijakazi,[2] has

timely responded.  Oral argument was not requested and is not deemed necessary.

Procedural Background

On June 4, 2018, plaintiff filed applications for disability benefits under Title II and

Title XVI, alleging that she became disabled on September 21, 2015.  This date was later

amended to August 10, 2018.  Plaintiff alleges that she is disabled due to diabetes, her back,

_____

[1]Docket No. 16.

[2]Docket No. 20.

-1-

COPD, polycystic ovary syndrome, fibromyalgia, depression, allergies, and morbid obesity.

Plaintiff's applications were denied initially, and she requested an administrative hearing.

After a hearing on September 8, 2021, an administrative law judge (ALJ) denied plaintiff's

applications. On June 7, 2022, the Appeals Council denied plaintiff's request for review,

thereby making the ALJ's October 4, 2021, decision the final decision of defendant. On July

18, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

## General Background

Plaintiff was born on August 11, 1968. She was 49 years old on the amended onset

of disability date. Plaintiff has a GED. Plaintiff's past relevant work includes work as a

clerk and a cashier.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the

Social Security Act through December 31, 2020."[3]

The ALJ next applied the five-step sequential analysis used to determine whether an

individual is disabled.[4]

---

[3]Admin. Rec. at 16.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial
> gainful activity? If so, the claimant is not disabled. If not,
> proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently
> severe to limit ... her ability to work? If so, proceed to step

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since August 10, 2018, the amended alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease, hip bursitis, chronic obstructive pulmonary disease (COPD), obesity, mood disorder, and dysthymia...."[6] The ALJ found plaintiff's diabetes to be "a non-severe condition since the amended alleged onset date."[7] The ALJ found "that [plaintiff's] fibromyalgia is not a medically determinable impairment."[8] The ALJ found plaintiff's

---

[4](...continued)
three. If not, the claimant is not disabled.
Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 16.

[6]Admin. Rec. at 16.

[7]Admin. Rec. at 16.

[8]Admin. Rec. at 16.

polycystic ovarian syndrome, allergies, and allergic rhinitis to be non-severe impairments.[9] The ALJ found that plaintiff's restless leg syndrome was not a medically determinable impairment and that her sleep apnea was "a non-severe impairment."[10] The ALJ found that plaintiff's hypoglycemia, anemia, diverticulosis, secondary thrombocytopenia, colitis, MRSA infection, dilated gallbladder, and coccydynia did not "meet the durational requirement for severe impairments."[11] The ALJ found plaintiff's alcohol abuse disorder to be a non-severe impairment and not "material to the decision" as "it is in remission[.]"[12]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[13] The ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 3.02 (chronic respiratory disorders), and the listings under Section 12.00 (mental disorders).[14] The ALJ considered the "paragraph B" criteria and determined that plaintiff had no limitations in understanding,

---

[9]Admin. Rec. at 17.

[10]Admin. Rec. at 17.

[11]Admin. Rec. at 17.

[12]Admin. Rec. at 17.

[13]Admin. Rec. at 18.

[14]Admin. Rec. at 18.

-4-

remembering, or applying information; moderate limitations in interacting with others; mild limitations with regards to concentrating, persisting, or maintaining pace; and mild limitations in regards to adapting or managing onself.[15]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can stand or walk for up to two hours in [a] day and sit for [up to] six ... hours. She has further non-exertional limitations as follows. She can perform occasional postural activities (balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, or scaffolds.) She must avoid concentrated exposure to respiratory irritants and hazardous machinery. She can perform simple, routine, and repetitive tasks and have occasional superficial interaction with the public.[16]

The ALJ discounted plaintiff's pain and symptom statements because they were "not entirely consistent with the medical evidence" and because they were inconsistent with her daily activities.[17]

---

[15]Admin. Rec. at 19.

[16]Admin. Rec. at 20.

[17]Admin. Rec. at 21, 28.

-5-

The ALJ found Dr. Toew's opinion[18] to be "generally persuasive, except as to the implication that the claimant requires 'non-critical, supportive' supervision...."[19] The ALJ found Dr. Brown's February 2018 opinion persuasive.[20] The ALJ found Dr. Arcega's May 2017 opinion[21] "generally persuasive...."[22] The ALJ found Dr. Caldwell's October 2019 opinion to be not persuasive.[23] The ALJ found the "composite opinion by Dr. Hinman and

---

[18]Dr. Toew testified as a medical expert at the administrative hearing. He opined that plaintiff would "be capable of maintaining simple, repetitive kinds of work activity on a full-time basis[,] should have minimal public contact[,] would be able to interact with coworkers[,]" and "would profit from non-critical, supportive supervision." Admin. Rec. at 55-56.

[19]Admin. Rec. at 27.

[20]Admin. Rec. at 29. Dr. Brown opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 2 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. Admin. Rec. at 108-110.

[21]Dr. Arcega opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 4 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs/ladders/ropes/scaffolds, kneel, crouch, and crawl; could frequently balance and stoop; and should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. Admin. Rec. at 94-95.

[22]Admin. Rec. at 29.

[23]Admin. Rec. at 29. Dr. Caldwell opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could never climb ladders/scaffolds; had no limitations as to climbing ramps/stairs, balancing, kneeling, and crawling; could occasionally stoop and crouch; was limited as to reaching overhead; should avoid moderate exposure to extreme cold, vibration, fumes, odors, dust, gases, and poor ventilation; and should avoid
(continued...)

-6-

Charles Gunderson"[24] to be unpersuasive.[25]   The ALJ found Dr. Lewy's opinion[26]

---

[23](...continued)
concentrated exposure to extreme heat, wetness, humidity, noise, and hazards.  Admin. Rec. at 2007-2010.

[24]On April 23, 2021, Gunderson found that plaintiff was "limited in her duration of standing due to pain and was able to walk for 6 minutes continuous movement for a distance of 500 feet.  The patient was able to pick up a 27 lb box from the ground to waist height with self-reported 5/10 for pain and improper lifting mechanics.  The patient was able to use the stairs with greater pain for a total of 96 steps."  Admin. Rec. at 2853.  Dr. Hinman concurred with Gunderson's findings and added that plaintiff would need 1-2 days of recovery after more than one hour of ambulation and that "I believe regarding any physical work she is unemployable."  Admin. Rec. at 2858.

[25]Admin. Rec. at 30.

[26]On June 29, 2017, Dr. Lewy opined that plaintiff had mild limitations in regard to understanding, remembering, or applying information; mild limitations in regard to interacting with others; moderate limitations in regard to concentrating, persisting, or maintaining pace; and moderate limitations in regard to adapting or managing oneself.  Admin. Rec. at 92.  Dr. Lewy opined that plaintiff was not significantly limited in her ability to carry out very short/simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decision, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in her ability to carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  Admin. Rec. at 96-97.  Dr. Lewy opined that plaintiff could "complete basic and familiar detailed tasks steadily during workdays and work weeks[,]" could "manage routine contacts with the public" and could "manage demands and changes in a routine work setting."  Admin. Rec. at 96-97.

unpersuasive.[27] The ALJ found Dr. Buskirk's opinion[28] "not entirely persuasive."[29] The ALJ found Dr. Jones' opinion[30] to be "not entirely persuasive[.]"[31] The ALJ found Dr.

---

[27]Admin. Rec. at 31.

[28]On February 6, 2018, Dr. Buskirk opined that plaintiff had moderate limitations in regard to understanding, remembering, or applying information; no limitations in regards to interacting with others; moderate limitations in regard to concentrating, persisting, or maintaining pace; and moderate limitations in regard to adapting or managing oneself. Admin. Rec. at 107. Dr. Buskirk opined that plaintiff was not significantly limited in her ability to carry out very short/simple instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavior extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and travel to unfamiliar places or use public transportation; and was moderately limited in her ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Admin. Rec. at 111-112. Dr. Buskirk opined that plaintiff could "complete basic tasks at a steady pace during workdays and workweeks with standard need to coordinate with others[,]" was "capable of routine interaction with the general public[,]" could "accept supervision delivered in a normative fashion and manage usual coworker contacts[,]" and could "complete workplace routines and cope with usual demands in a workplace." Admin. Rec. at 111-112.

[29]Admin. Rec. at 31.

[30]On October 3, 2019, Dr. Jones opined that plaintiff did not have a medically determinable mental impairment and mild limitations in terms of her ability to adapt or manage oneself. Admin. Rec. at 151.

[31]Admin. Rec. at 31.

-8-

Campbell's opinion[32] unpersuasive.[33]  The ALJ considered the lay testimony of an SSI facilitator and plaintiff's daughter.[34]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[35]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including work as a garment sorter, small parts assembler, and office helper.[36]  These are classified as "light work" jobs and the ALJ relied on the vocational expert's testimony that these jobs would be available even though plaintiff's "residual functional capacity includes a limitation to two hours of standing or walking, which is below the standard six-hour range in the definition of 'light' work[.]"[37] The ALJ noted that the vocational expert testified that these jobs could "generally be

---

[32]On June 23, 2017, Dr. Campbell opined that plaintiff "should not be considered competent to manage her own benefits."  Admin. Rec. at 714.

[33]Admin. Rec. at 31.

[34]Admin. Rec. at 32.  On August 16, 2018, an SSA employee noted that plaintiff was "very hard to understand.  Had to repeat information.  She explained she had to exercise her voice to actually speak to get it moving.  Could hear wheezing at times and loss of words when speaking.  Difficulty breathing, understanding, coherency, talking, answering." Admin. Rec. at 473.  Plaintiff's daughter completed a function report on September 27, 2018. Admin. Rec. at 456-464.

[35]Admin. Rec. at 32.

[36]Admin. Rec. at 33.

[37]Admin. Rec. at 33.

performed in a standing or seated position" and that this testimony was based on the vocational expert's "35 years of professional experience[.]"[38] The ALJ "determined that the vocational expert's testimony [was] consistent with the information contained in the Dictionary of Occupational Titles ['DOT'] or is otherwise based upon her professional experience."[39]

The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from August 10, 2018, through the date of this decision...."[40]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole,

---

[38]Admin. Rec. at 33.

[39]Admin. Rec. at 34.

[40]Admin. Rec. at 34.

-10-

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff first argues that the ALJ erred in accepting the vocational expert's testimony. "Once a claimant establishes at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, ... she has made out a prima facie case of a disability." White v. Kijakazi, 44 F.4th 828, 833 (9th Cir. 2022). "The burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." Id. (quoting 20 C.F.R. § 416.960(c)(2)). "The Commissioner can carry this burden through the testimony of a" vocational expert or "the Medical-Vocational Guidelines[.]" Id.

Here, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including work as a garment sorter,

small parts assembler, and office helper.[41]  These three jobs are classified as light work and the ALJ relied on the vocational expert's testimony that these jobs would be available even though plaintiff's "residual functional capacity includes a limitation to two hours of standing or walking, which is below the standard six-hour range in the definition of 'light' work[.]"[42] In other words, the vocational expert's "'opinion that [plaintiff was] able to work conflict[ed] with ... the requirements listed in the'" DOT.  Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016)).  When such a conflict arises, "'the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.'"  Id. (quoting Gutierrez, 884 F.3d at 807).

At the administrative hearing, the ALJ expressly asked the vocational expert whether the three jobs in question would be available "[e]ven though the stand/walk would be limited to two hours a day?"[43]  The vocational expert explained that "[t]he position of Garment Sorter is one that often can be performed either standing and/or sitting.  Small Parts Assembler is consistent with that, as would [be] the Office Helper."[44]  In addition, plaintiff's attorney asked the vocational expert why the three jobs were classified as light work, and the vocational expert answered that it was because they "may require lifting in excess of ten

---

[41]Admin. Rec. at 33.

[42]Admin. Rec. at 33.

[43]Admin. Rec. at 80.

[44]Admin. Rec. at 80.

-12-

pounds, or likely do[] in many applications."[45]  The vocational expert also testified that in her over 35 years of experience, she has seen situations in which the garment sorter, small parts assembler, and office helper jobs could be performed even if the person was limited to two hours of walking/standing.[46]  The vocational expert explained in greater detail how each of the three jobs could be done while seated.

As for the garment sorter job, the vocational expert explained that

> [o]ftentimes people have an opportunity to choose whether they want to sit or stand doing that job.  But again, it's a production job, inspecting and moving products through a process.  So they would be sitting for part of that, but oftentimes they have to move what they have been working onto another workstation, or place items in a box or a tote, something like that.  So, it's certainly common for people to be able to sit and/or stand, but definitely does require standing at some point to move items, and that could be up to two hours a day, consistent with the hypothetical.[[47]]

As for the small parts assembler job, the vocational expert explained that

> most of the time it would be ... seated at a bench or something like that.  But what it does do is it would allow someone to primarily sit for six hours, and the standing and walking would be when they get up and, you know, maybe get more articles to work on, or take the articles that they have assembled and move them on to the new workstation[,] that type of thing.  So, it's pretty common for a Small Parts Assembler to be able to

---

[45]Admin. Rec. at 81.

[46]Admin. Rec. at 81-82.

[47]Admin. Rec. at 83.

-13-

incorporate both sitting and standing.[48]

As for the office helper job, the vocational expert explained that

> the job oftentimes is performed at a desk, but furthermore, typically an Officer Helper has an opportunity to sit on a clerical desk chair and be able to do their work from the chair, whether it's filing, or, you know, even if it's having to reach lower filing cabinets and that type of thing. So, it's one that they can choose to sit or chose to stand for much of the job.[49]

Plaintiff argues that the vocational expert's explanation of how plaintiff could perform these light work jobs when limited to only two hours of walking/standing was not reasonable and did not reconcile the inconsistency between the vocational expert's testimony and the DOT. Plaintiff contends that the vocational expert's testimony was equivocal because she testified that the three jobs were classified as light work because they "may require lifting in excess of ten pounds, or likely do[] in many applications."[50] Plaintiff makes much of the fact that the DOT provides that work is classified as light work "when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls."[51] Similarly, Social Security Regulations provide that work is considered light work "when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). And, the Social Security Rulings explain that

---

[48]Admin. Rec. at 82.

[49]Admin. Rec. at 82.

[50]Admin. Rec. at 81.

[51]Appendix C: Components of the Definition Trailer, <u>DOT</u>.

[a] job is [considered light work] when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

SSR 83-10. Plaintiff argues that the vocational expert did not testify that the three jobs in question were light work because they involved sitting while pushing or pulling arm or leg controls, but rather that these jobs were classified as light work because of the lifting requirements. Thus, plaintiff argues that the vocational expert's explanation of why she would be able to perform these light work jobs even though she could only stand/walk for two hours per day was not reasonable. Plaintiff seems to be arguing that in order for work to be considered light work that can be done while sitting, it must include "some pushing and pulling of arm or leg controls[,]" 20 C.F.R. § 404.1567(b), but that this is not how these three jobs are described in the DOT.

There was nothing equivocal about the vocational expert's testimony. Plaintiff's primary complaint seems to be that the vocational expert testified that the three jobs in question were classified as light work because of their lifting requirements. But, given that one of the differences between light work and sedentary work is the lifting requirement, this was a reasonable explanation for why these three jobs were classified as light work. As for how someone who was limited to standing/walking two hours a day could perform the three jobs, the vocational expert provided a reasonable explanation. The vocational expert

-15-

adequately explained how a person who could only walk/stand two hours per day could perform any of the three jobs in question. Thus, the ALJ did not err at step five by relying on the vocational expert's testimony.

Plaintiff next argues that the ALJ erred in discounting her pain and symptoms statements. "'An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014)). "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." Id. Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]"[52]

"Then, provided 'there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1112 (quoting Garrison, 759 F.3d at 1014–1015). "This standard is 'the most demanding required in Social Security cases.'" Id. (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

---

[52]Admin. Rec. at 21.

-16-

Here, the ALJ did not find any evidence of malingering and gave two reasons for discounting plaintiff's pain and symptom statements. First, the ALJ discounted plaintiff's pain and symptom statements because they were "not entirely consistent with the medical evidence[.]"[53] Second, the ALJ discounted plaintiff's pain and symptom statements because they were inconsistent with her daily activities.[54] Plaintiff argues that neither of these reasons was a clear and convincing reason for discounting her pain and symptom statements. The court considers these two reasons in reverse order.

As for plaintiff's daily activities, the ALJ pointed out that plaintiff had "reported that her daily activities included watching television, reading, computer activities, and games, and she stated that she 'does fine' at these activities."[55] The ALJ also noted that plaintiff "reported spending time with her daughter and going to AA meetings and the store...."[56] The ALJ also made reference to the fact that plaintiff was "able to drive" and to the fact that she "spends time visiting with an infant granddaughter" and "was scheduled to babysit her grandchild...."[57] The ALJ explained that "[w]hile these are not extraordinarily exertional or

---

[53]Admin. Rec. at 21.

[54]Admin. Rec. at 21, 28.

[55]Admin. Rec. at 28.

[56]Admin. Rec. at 28.

[57]Admin. Rec. at 28.

demanding activities, they suggest greater abilities than the claimant alleges."[58]  The ALJ explained that "'doing fine' at sedentary activities like watching television, reading, using a computer, and playing games indicates that the claimant is able to tolerate sitting sufficiently to enjoy these activities, for which a television program suggests 40 to 60 minutes, while other activities could take longer."[59]  The ALJ further explained that plaintiff's ability to drive "suggests tolerance of sitting for varying lengths of time while maintaining the attention and alertness necessary to complete a trip safely."[60]  The ALJ explained that "[b]abysitting her granddaughter would require securely holding a moving bundle weighing more than ten pounds" and that "[h]er time spent with her daughter, at AA meetings, or at the store suggests that she can interact appropriately with familiar people and sustain intermittent interactions in a group or public setting."[61]

"An ALJ may ... consider 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'"  <u>Smartt v. Kijakazi</u>, 53 F.4th 489, 499 (9th Cir. 2022) (quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1040 (9th Cir. 2007)).  "Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

_____

[58]Admin. Rec. at 28.

[59]Admin. Rec. at 28.

[60]Admin. Rec. at 28-29.

[61]Admin. Rec. at 29.

debilitating impairment.'" Id. (quoting Molina v. Astrue, 674 F.3d at 1104, 1113 (9th Cir.

2012), superseded on other grounds by 20 C.F.R. § 404.1502(a)). But, "daily activities may

[only] be grounds for an adverse credibility finding if a claimant is able to spend a substantial

part of h[er] day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citation

omitted). "The ALJ must make specific findings relating to [the daily] activities and their

transferability to conclude that a claimant's daily activities warrant an adverse credibility

determination." Id. (citation omitted). The Ninth Circuit has "repeatedly warned that ALJs

must be especially cautious in concluding that daily activities are inconsistent with testimony

about pain, because impairments that would unquestionably preclude work and all the

pressures of a workplace environment will often be consistent with doing more than merely

resting in bed all day." Garrison, 759 F.3d at 1016.

Plaintiff does not challenge the ALJ's reliance on her daily activities as a basis to

discount her symptom statements as they relate to her mental impairments.[62] This reason by

itself constitutes substantial evidence to support the ALJ's discounting of plaintiff's symptom

statements as they relate to her mental impairments. Thus, the ALJ did not err in discounting

plaintiff's symptom statements as they relate to her mental impairments.

Plaintiff does, however, challenge the ALJ's reliance on her daily activities as a basis

to discount her pain and symptom statements as they relate to her physical impairments (her

---

[62]Motion for Miscellaneous Relief [etc.] at 13, Docket No. 16.

COPD and her hip and spine impairments). Plaintiff argues that her ability to watch television, read, use a computer, spend time with her granddaughter, and go to AA meetings and stores does not translate into an ability to sit for six hours on a daily basis. Plaintiff argues that the record does not indicate how long she performed most of these activities and that the ALJ failed to consider that some of these activities could be performed while lying down or moving about to relieve pain.

Plaintiff's daily activities were not a clear and convincing reason for discounting her pain and symptom statements as they related to her physical impairments. The ALJ did not adequately explain how plaintiff's ability to do these daily activities would translate into an ability to do the physical tasks necessary to maintain full-time employment.

The other reason the ALJ gave for discounting plaintiff's pain and symptom statements as they related to her physical impairments was that these statements "were not entirely consistent with the medical evidence[.]"[63] "'Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.'" Smartt, 53 F.4th at 499 (9th Cir. 2022) (quoting Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008)).

In regards to plaintiff's COPD, the ALJ found that "the record since August 2018 indicates good response to treatment and lifestyle adjustments and is not consistent with

_____

[63]Admin. Rec. at 21.

-20-

persistent marked limitations from respiratory symptoms."[64] The ALJ explained that "[t]he evidence regarding lung disease indicates that [plaintiff] has had intermittent exacerbations with seasonal conditions or illness, complicated by smoking. However, the record indicates that she has had overall improvement with generally stable symptoms since she had changes in her treatment beginning after her hospitalizations, and particularly after her change of medications and gastric-bypass surgery in August 2018."[65]

Plaintiff, however, points to evidence in the record that her COPD continued to be a significant problem after August 2018. In particular, plaintiff points to a July 30, 2020 treatment note in which she reported episodes of gasping for breath[66] and a December 2020 treatment note in which she reported shortness of breath and had "increased effort with inhalati[on]" and "slightly prolonged exhalation."[67] Plaintiff also points out that her FEV1 and DLCO values were reduced on her August 2020 pulmonary function testing when compared to her February 2018 testing.[68] Plaintiff insists that the evidence shows that her COPD was "objectively worsening over time and remained minimally above the levels that

---

[64]Admin. Rec. at 21.

[65]Admin. Rec. at 23.

[66]Admin. Rec. at 2313.

[67]Admin. Rec. at 2477, 2483.

[68]Admin. Rec. at 1363 compared to 2322.

-21-

Listing 3.02 describes as per se disabling[.]"[69]

The evidence that plaintiff points to does show that plaintiff's COPD continued to cause problems for her after August 2018. But, the evidence that the ALJ has cited does show, as the ALJ found, that plaintiff's COPD had improved overall and was largely stable. As plaintiff herself testified at the administrative hearing, her lungs and breathing "haven't been so bad[,]" for the past year, in large part due to the new medication she was taking.[70] "When the evidence before the ALJ is subject to more than one rational interpretation," the court "must defer to the ALJ's conclusion." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004). Thus, the court must defer to the ALJ's finding that plaintiff's pain and symptom statements were inconsistent with the medical evidence as it related to her COPD.

In regard to plaintiff's hip and spine impairments, the ALJ reviewed the medical evidence and discussed the various treatment plaintiff had undergone, including several rounds of physical therapy;[71] multiple hip, epidural steroid, caudal steroid, and trigger point

---

[69]Motion for Miscellaneous Relief [etc.] at 17, Docket No. 16. Listing 3.02 includes FEV1 and DLCO levels that must be met in order for a claimant to meet the listing.

[70]Admin. Rec. at 57.

[71]Admin. Rec. at 1682, 2100, 2140, 2844.

injections;[72] radiofrequency ablations;[73] and nerve block injections.[74]  The ALJ noted that "[i]maging shows moderate to severe lumbar stenosis and lumbosacral nerve-root involvement, cervical degenerative changes, and enthesopathy affecting the greater trochanters."[75]  The ALJ also noted that "[p]roviders have noted pain limitation of her lumbar range of motion and some limitation of hip movement."[76]  But, the ALJ found that plaintiff "retained generally intact strength and sensation despite subjective weakness and feelings of numbness or tingling in her feet."[77]

Although the ALJ reviewed the entire medical record as it pertained to plaintiff's hip and spine impairments, "the 'clear and convincing' standard requires an ALJ to show his work[.]" <u>Smartt</u>, 53 F.4th at 499.  The ALJ cannot simply recite the medical evidence and state that it is "not fully consistent with [plaintiff's] allegations of limitation."[78]  Yet, that is what the ALJ did as regards the medical evidence related to plaintiff's hip and spine impairments.  The ALJ did not explain how this medical evidence undermined plaintiff's

---

[72]Admin. Rec. at 1609, 2017, 2052, 2074, 2210, 2246, 2330, 2338, 2361, 2369, 2562, 2578, 2615, 2670, 2696, 2715.

[73]Admin. Rec. at 2044, 2048, 2347, 2351.

[74]Admin. Rec. at 2020, 2028, 2032, 2060, 2064.

[75]Admin. Rec. at 25.

[76]Admin. Rec. at 25.

[77]Admin. Rec. at 25.

[78]Admin. Rec. at 23.

-23-

subjective statements regarding her pain and symptoms. Thus, the ALJ erred in finding that plaintiff's pain and symptom statements were inconsistent with the medical evidence as it related to her hip and spine impairments.

In sum, as to plaintiff's pain and symptom statements as they relate to her physical impairments, the ALJ gave one invalid reason (inconsistent with daily activities) and one reason that was partially valid and partially invalid (inconsistent with medical evidence). The question then is whether the ALJ's errors in discounting plaintiff's pain and symptom statements as they relate to her physical impairments were harmless. The Ninth Circuit has "held that an ALJ's error [is] harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." Molina, 674 F.3d at 1115. "In this context," the Ninth Circuit has "said that an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." Id. (citation omitted). Here, there does not remain substantial evidence to support the ALJ's decision to discount plaintiff's pain and symptom statements as they relate to her physical impairments. The ALJ's one partially valid reason for discounting plaintiff's pain and symptom statements as they relate to her physical impairments does not constitute substantial evidence. Thus, the ALJ's error was not harmless.

Because the ALJ erred in discounting plaintiff's pain and symptom statements as they relate to her physical impairments, the court must consider whether to remand this matter for

-24-

further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Plaintiff argues that a remand for benefits would be appropriate if the ALJ erred in discounting her pain and symptom statements because she would be disabled if her

statements were credited as true. But, a remand for further proceedings is required because there is no evidence that if plaintiff were as limited as she claims due to her physical impairments, there would be no jobs she could perform.

## Conclusion

The final decision of defendant is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 13th day of March, 2023.

/s/ H. Russel Holland
United States District Judge

-26-